**TADEMY v. SCOTT et al.**

No. 2701.

District Court, N. D. Georgia,
Atlanta Division.

Jan. 30, 1945.

Clint W. Hager and J. Frank Kemp, both of Atlanta, Ga., and Barnett, Barnett, Jones & Stone, of Jackson, Miss., for plaintiff.

Bryan, Carter and Ansley, of Atlanta, Ga., for defendants.

RUSSELL, District Judge.

Plaintiff, a resident of the State of Mississippi, instituted this action against the defendants, residents of the State of Georgia, seeking to recover damages for a libelous article alleged to have appeared in a paper published by the defendants. The complaint alleges that the defendants are engaged in the business of printing, publishing and circulating several newspapers which specialize in the printing, publishing and dissemination of news of and concerning negroes, and that "among the papers so printed, published and sold by said defendants is a newspaper known as the Jackson Advocate" which devotes its news columns especially to the printing of news and news items of and concerning generally members of the negro race located in Jackson, Mississippi, and its immediate vicinity. It is further alleged that the Jackson Advocate is printed and published by the defendants at their place of business located in the City of Atlanta, Georgia, and was being so printed and published by them and was being offered for sale and circulation in Jackson, Mississippi, and its immediate vicinity on the 6th day of March, 1943. On this date it is alleged defendants published in the Jackson Advocate an article denominated and headed "Up and Down Farish Street," which article and publication was false, malicious and libelous per se for reasons alleged. It is alleged that the defendant's newspaper had a wide circulation in Jackson, Mississippi, and its immediate vicinity; that the paper was not circulated by mail but delivered to its subscribers by news boys and otherwise and is widely read. It is further alleged that on the following week there was published in such paper an article and a publication which reiterated the previous malicious, false and libelous matter theretofore published on March 6th. Copies of each of the articles are attached to the petition as an exhibit.

By way of answer the defendants interpose three defenses: First, that the complaint fails to state a claim upon which relief can be granted. Second, a denial of the allegations of the numbered paragraphs of the petition which charge the defendants with printing, publishing and circulating and offering for sale the Jackson Advocate, and expressing for want of sufficient information their inability to either admit or deny the numbered paragraphs of the complaint averring the false, malicious and libelous nature of the article and publication. Third, defendants aver that they did not and do not own, publish, manage, control, sell or circulate the newspaper described in the complaint as the Jackson Advocate.

Upon the call of the case for trial by the court without a jury, defendants presented by motion to dismiss the complaint the question, deemed to be inherent in the first defense, predicated upon the contention that as the complaint failed to allege that the notice required by the Acts of the General Assembly of Georgia of 1939, Georgia Laws 1939, page 343, had been given, the suit was prematurely brought, could not be maintained, and was subject to dismissal. The plaintiff contended that as the libel was published in Mississippi, and the damages accrued there, the action was to be determined by Mississippi law, and that therefore the Georgia Statute was not applicable. Decision on the law point was reserved by the court and the parties proceeded to the introduction of testimony.

## Findings of Fact

The defendants neither own, publish, manage or control the Jackson Advocate. The defendants, who do own, print and publish a negro newspaper in Atlanta, do print the Jackson Advocate under an arrangement whereby Percy Green, the editor and publisher of the paper, forwards to Atlanta news, articles and advertise-. ments from Jackson, Mississippi, and the defendants insert a sufficient amount of news matter and advertising of national interest to fill out the columns of the newspaper. Defendants have no control over the local news matter and articles to be published, and receive as compensation for their services payments dependent upon the number of copies printed and a charge for each column of newspaper composition of local news set up, and so much for making up the page, which compensation averages around $50 a week. The local news and articles are set up, proof read, and printed by the defendants but edited no more than the possible insertion of a head line if one is omitted from the copy sent.

After the paper is printed in Atlanta, the copies are wrapped and shipped by express to the editor and publisher in Jackson, Mississippi, and thereafter circulated by him in the manner usual with newspapers. The defendants have no further connection with the copies after shipment from Atlanta.

So far as the local news is concerned, the defendants' participation in the publication thereof is to no greater extent than the customary engagement of a job printer, and as to the publication of the paper as a whole, the defendants' participation is that of a job printer who furnishes as a part of the printing service news of national interest and advertisements to complete the filling of columns and present a newspaper which will have its volumns filled, though in such filling defendants did insert some advertisements which it collected for.

Defendants have no actual knowledge of the contents of the articles in question, though in the usual course of business it was read by a proof reader in their employ. Defendants did not know plaintiff and had no connection with him.

No notice of any kind was given the defendants prior to the institution of the suit, though the plaintiff did, in Jackson, Mississippi, demand of the author of the articles, the editor and publisher of the paper, a retraction, which demand was denied.

Plaintiff is a negro, is a teacher of good reputation in the communities where he has lived, and occupies a responsible position as principal of a negro school in Jackson, Mississippi. The charges made concerning the plaintiff in the article published are such as would injure his reputation and expose him to public hatred, contempt and ridicule; would lessen him in public esteem and respect of his neighbors, and impute to him a want of capacity in the conduct of his profession as a teacher. No plea of justification was filed, but in the development of the facts, the court heard evidence of the alleged informant of the author of the libelous article, from which, if a holding were proper, it should be determined that the author of the article had no sufficient information or facts to establish the truthfulness of his charges.

## Conclusions of Law

This court has jurisdiction of this cause by reason of diversity of citizenship and the amount in controversy being more than three thousand dollars.

The plaintiff is not entitled to recover of the defendants.

## Discussion

■ Without determination of the question whether the complaint as a pleading was subject to dismissal for failure to allege compliance with the terms of the Act of the General Assembly of Georgia of 1939, Georgia Laws 1939, page 343, upon the coming in of the evidence, and when the facts were developed, the failure of the plaintiff in this case to comply with the terms of the Georgia Statute preclude recovery by him. Any Georgia printer of a newspaper whose sole participation in its publication consists of printing copy forwarded to him from another State, and who has no part in the direction and control of such articles, and no knowledge of the falsity of any charge contained therein, or reason to doubt its correctness, and whose

connection with the publication ends when the papers are bundled up and delivered to a common carrier for shipment to the editor and publisher of the paper, can properly rely upon the terms and provisions of the Georgia Statute, and when sued for a libel appearing in such publication merely printed by him, assert the failure to give the notice required by the statute as a bar to the action.

The Georgia Statute, supra, provides that "before any civil action shall be brought because of any publication of a libel in any newspaper, magazine or periodical, the plaintiff shall, within the periods of the statute of limitations for such actions and at least five days before instituting such action, give notice in writing to the defendant specifying the article and the statements therein which he claims to be false and defamatory and further stating in said notice what the complaining party claims to be the true state of facts." Section 2 reaffirms the defense of truth and/or privilege, as the case may be, but makes material change in the theretofore existing law of Georgia in instances where the defendant would be liable, by providing that if it appears upon the trial that the article was published in good faith, and was due to an honest mistake of the facts; that there were reasonable grounds for believing that the statements in said article were true, and that within ten days after the service of said notice a full and fair correction or retraction was published, in the manner specified, "then the plaintiff in such case shall recover only such special or actual damages as the plaintiff shows he has sustained."

This Act has been twice before the Georgia Appellate Courts. In Hall v. Kelly, 61 Ga.App. 694, 7 S.E.2d 290, 291, the Court of Appeals held that an action seeking to recover damages for a libel published in a newspaper before the passage of the Act of 1939, supra, was subject to dismissal as prematurely brought where the action was filed after the passage of the Act and did not allege the giving of the notice as provided therein. In that case, in the absence of an attack upon the constitutionality of the statute, the majority of the judges participating in the decision did not deal with the "rights" taken away by the passage of the Act, as to whether they were vested or not, but stated that "the Act took away from the plaintiff certain rights." One judge dissenting construed the Act to "deprive the person who had been libelled under a charge which was actionable per se of a vested right" to recover "general damages." This judge construed the decision of the majority to hold that a suit which failed to allege the giving of the notice prescribed by the statute "failed to set out a cause of action." Upon the return of the case to the trial court, an amendment was made by the plaintiff attacking the constitutionality of the statute. The demurrer was renewed, the trial court sustained it and dismissed the petition, and upon review in the Supreme Court of Georgia [191 Ga. 470, 12 S.E.2d 883], that court held that the decision of the Court of Appeals in the former case that the petition "was subject to demurrer as prematurely brought, since it failed to allege that the plaintiff had given to the defendants written notice with an opportunity to correct or retract the publication in the newspaper where it appeared, as provided for by that act" was the law of the case, unless the Act be determined unconstitutional under the plaintiff's attack. The constitutionality of the Act was upheld upon the principle that the plaintiff had no vested right to punitive damages prior to judgment therefor "and accordingly the right to such damages may be taken away by a statute taking effect even after a verdict but before judgment has been rendered thereon." 16 C.J.S., Constitutional Law, § 254, p. 677 and citations; 12 C.J. 973 § 555, and citations. It was further stated "under the preceding rules, the fact that the alleged libelous articles were published before the adoption of the act referred to, *limiting the plaintiff's previously existing right to recover punitive damages,* did not render the law unconstitutional * * *." (Emphasis supplied). Kelly v. Hall, 191 Ga. 470, 472, 12 S.E.2d 881, 883.

These two decisions of the Georgia courts establish the Georgia law to be that in case of libel by a newspaper, no action can be maintained, at least to recover punitive damages, unless the plaintiff allege and

prove compliance with the Georgia Statute as to the giving of notice and opportunity for retraction, and it would follow that where such notice was not given the Act forbids the recovery of punitive damages for libel by a newspaper. In other words, the Act is construed by the Georgia courts to not only limit, but to prevent the recovery of punitive damages in an instance where the prescribed notice has not been given.

In the present instance, we are not concerned with the recovery of any actual damages, for none are plead or proved by the plaintiff.

▆▆▆ It appears to be a fair conclusion to be reached from the construction given the Act in the case heretofore considered by the Georgia courts, to say that the statute removes from the law of Georgia the right to recover punitive damages in such libel actions unless the terms of the statute be complied with. The actual publication of the libel now in question took place in the State of Mississippi. In that State there is in effect no statute similar to the Georgia statute. However, while any ultimate wrong was there done, the only participation of the present defendants therein was the result of the printing of the libelous article in Georgia. In this suit, seeking to recover punitive damages for such printing, there is a conflict of laws with reference to liability between the laws of the State of Georgia and the laws of the State of Mississippi. While the question is not free from doubt, as I understand the teaching of the decision in Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462, and in Klaxon Company v. Stentor Company, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, in case of such conflict of laws, a Federal court sitting in Georgia is required to apply the Georgia rule, and it is my legal duty here to give effect to the Georgia law to the same extent as it would be effectuated if

the suit were pending in the State courts. Proceeding thus, I can conclude that the present action if proceeding in the State courts would be adjudged not sufficient to permit a recovery of punitive damages from the defendants. The policy of the State of Georgia is declared by the statute and the decisions construing it. This policy forbids the recovery of punitive damages except after compliance with the statute. The plaintiff shows no right to any other damages, and in these he has no vested interest. Thus, the deprivation of the right of recovery of such, except by compliance with the terms of the Georgia law, does not impinge the full faith and credit clause of the Constitution of the United States. Article 4, § 1.

A different question might be presented if the plaintiff had proved any actual damage resulting from the libel. But as stated, no such damages are shown in this case.

As I construe the Georgia Statute to express the public policy of the State that no action shall be instituted, nor any recovery had, for punitive damages for libel by an article in a newspaper, except after full compliance with the Act of 1939, supra, and further conclude that it is the duty of this court to apply the Georgia law to the action pending herein, it follows that the plaintiff is not entitled to recover the punitive damages sought. See Restatement, Conflict of Laws, §§ 602 and 612.

Able counsel for the plaintiff urges that the Georgia Statute applies only to actions having their origin in the State of Georgia, and that to give effect to the statute in this case destroys the substantive right of the plaintiff to damages provided by the laws of the State of Mississippi. This argument can not be accepted for the reasons above stated. Decisions throwing some light upon the question as here determined are: Gray v. Blight, 10 Cir., 112 F.2d 696 and Fahy v. Lloyd, D.C., 57 F.Supp. 156.

Judgment should go for the defendants.